**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.      ) | **Case No.: 2:06cr257-MEF** |
| ) | |
| **ANDREW PRESTON MAYFIELD** ) | |

## SENTENCING MEMORANDUM

*The mass of men lead lives of quiet desperation.*

*Henry Davis Thoreau*

## FACTS

Andrew Mayfield was born in Chicago, Illinois. When his mother and father divorced, he moved with his mother to Brent, Alabama, where he lived with his mother and three younger brothers and sisters. Without a father in the home as a breadwinner, the family struggled financially.

As a student at Bibb County High School, Andrew Mayfield was enrolled in the Health Science program at Bibb County Career Technical Center. Based on her personal observations, Mr. Mayfield's instructor in that program, Ms. Wanda Mounts, believed that he showed great promise in the field of Health Sciences. Ms. Mounts went so far as to appoint Andrew as the President of the Center's chapter of the Health Occupations Students of America (HOSA). However, while impressed with both Andrew's aptitude and attitude in the field of health sciences, Ms. Mounts made another telling observation: she recognized that Mr. Mayfield struggled financially. For instance, he couldn't pay in full for his uniform

when it was issued, but had to pay for it over time. Ms. Mounts was adamant that Andrew should pursue a career in health sciences, and discussed post-secondary education with him. Andrew's response was that he didn't believe that his finances would allow it.

Ms. Mounts believed that Andrew had resigned himself to the notion that he couldn't afford further education, and that this resignation grew out of the responsibility that he felt for the financial well-being of his entire family (as noted in the Presentence Investigation Report (PSR), Andrew's mother is currently unemployed).

Mr. Mayfield cooperated fully with authorities after his arrest, and made a complete statement to Detective Boles of the Prattville Police Department. Doc. 20, Def. Exh. 5. During the interview, Det. Boles noted that Andrew was respectful, and he repeatedly commended Andrew for his good attitude. Det. Boles stated that he was curious as to why someone like Andrew would rob a bank. Andrew's answer is quite telling: "I guess money is kind of tight. Everybody got bills. I know my life ain't no different from yours, or his out there, but, you know, just wanted to get enough, to just, to you know maybe try to start a business, maybe uhm, I had good intentions, I am not a greedy person, but uhm, *I just, you know, wanted to take care of everything, you know, pay all the bills, take care of family, uhm, medication for grandma, medication for little sister . . . .*" (emphasis added). Det. Boles went on to comment that Andrew's reasons for doing what he did were vastly different than the typical reasons that motivate others to commit such criminal misconduct. Doc. 20, Def. Exh. 5, p. 6. Andrew's comments, and Det. Boles' observations, are consistent with what one would expect in a case that involves someone such as Andrew, who, prior to this

incident, had absolutely no criminal history.

## DISCUSSION

In light of the Supreme Court's opinion in *United States v. Booker*, the sentencing court's determination of the appropriate sentence is no longer confined to a determination of the appropriate offense level, criminal history, and availability of authorized downward departures. Rather, under the post-*Booker* discretionary sentencing regime, the advisory guideline range is only one factor among several that this Court is required to consider in imposing a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). It is the sentencing statute, not the Sentencing Commission, which now governs the sentencing process.

The overriding principle and basic mandate of §3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). In determining the sentence minimally sufficient to comply with the purposes of sentencing, the court must consider several factors, which include, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed educational and vocational training. 18 U.S.C. §3553(a)(1) and (2). Moreover, under 18 U.S.C. §3661, *"no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for

the purpose of imposing an appropriate sentence." (emphasis added).

In fashioning an appropriate sentence for Mr. Mayfield, he suggests that the Court should take particular note of several important factors. First, the Court should consider Mr. Mayfield's age. Mr. Mayfield also contends that the Court should consider the fact that his conduct in the instant offense was totally out of character for him.

At the time of this offense, Andrew was a very young adult, just 19 years old. He suggests that this Court should consider his youthful immaturity and how it contributed to the commission of his offense, when deciding what sentence is "sufficient, but no greater than necessary," to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2).

The United States Sentencing Commission recognizes that aberrant behavior may be a basis that would support the imposition of a below-Guidelines sentence. U.S.S.G. §5K2.20. The requirements to qualify for a downward departure under that section of the Guidelines are that: 1) the defendant committed a single criminal act or transaction; 2) which was of limited duration; and 3) represents a marked deviation by the defendant from an otherwise law-abiding life. So far for Mr. Mayfield, so good. But, §5K2.20 goes on to state that the court may not depart downward if: 1) the offense involved serious bodily injury or death; 2) the defendant used a firearm or other dangerous weapon; 3) the offense is serious drug trafficking offense; or 4) the defendant has more than one criminal history point or a prior felony conviction. It is the second of these caveats that snares Mr. Mayfield and keeps him from qualifying for a downward departure under §5K2.20; while he did not use a firearm, he did use a BB pistol, which is defined to be a dangerous weapon. However,

§5K2.20 is a policy statement.

In a pre-*Booker* world, a sentencing court was not bound by a policy statement; in a post-*Booker* world, even less so. Mr. Mayfield argues that the term "downward departure" ceases to have any real meaning under an advisory-Guideline scheme. Under a mandatory scheme, a defendant had to meet the strict requirements set forth in the Guidelines to qualify for a downward departure. Under an advisory scheme, this is no longer the case. Supreme Court Justice Scalia has recently noted, "[T]he district judge can simply disagree with the basic–basic reasons of the commission, can simply disagree with the fact that the commission considers white collar crime, for example, something that should justify incarceration." Oral argument in *United States v. Rita*, at 47, *available at* http://www.supremecourtus.gov/oral_arguments/argument_transcripts/06-5754.pdf. During that same oral argument, United States Deputy Solicitor General Michael Dreeben conceded that very point: "I think that the reconciliation of this Court's merits opinion in Booker and its remedial opinion in Booker does dictate that the judge has additional freedom to impose a sentence that's different from what's described in the guidelines." *Id*. at 34. Therefore, in considering the history and characteristics of Mr. Mayfield, this Court can–and Mr. Mayfield contends should–consider whether his commission of the instant offense is so out of character for Mr. Mayfield that a reasonable sentence would be less than a Guidelines sentence, even though he does not technically meet all the criteria suggested by the Sentencing Commission in 5K2.20.

Mr. Mayfield's offense was indisputably a single transaction that was a marked

deviation from an otherwise law-abiding life, and which demonstrated little real forethought. The manner in which Mr. Mayfield committed his offense speaks volumes about his lack of planning and preparation: he robbed the bank on a Monday, which is likely to be one of the two busiest days of the week, as it follows the weekend; he robbed the bank in the middle of the day, near the lunch hour, when the bank is likely to be busier than at other times; he used his mother's car, which was easily identified, as his getaway car; he did nothing to remove or obscure the license plate, which was easily identifiable by a customer at the bank; he left behind a piece of evidence (a pillowcase) at the bank; when he left the bank, he was headed back to his home in Millbrook; he was quickly apprehended, with the fruits of his robbery and other evidence all plainly visible in the car. A criminal mastermind, Mr. Mayfield is not.

Mr. Mayfield increasingly had begun to live a life of quiet desperation because of the state of his family's finances. The heavy burden that weighed upon him to fill the role of provider for his mother and three younger siblings exacted a heavy toll, until Mr. Mayfield acted rashly in a foolish attempt to find a quick fix to his family's financial difficulties. For that, he must pay a substantial penalty. He contends, however, that a sentence at even the lowest end of the applicable Guideline range would be too harsh a penalty. In light of the constellation of circumstances present in this case–Mr. Mayfield's youth, his complete lack of a criminal history, his aberrant behavior–Mr. Mayfield urges the Court to find that a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in §3553(a)(2) is well below the standard Guidelines sentence.

Mr. Mayfield, who had never served even a single day behind bars, has now been incarcerated in the Montgomery City Jail for nearly ten months. During that period of time he has seen the sunlight only on the few occasions when he has had a court appearance. He has had many, many days and countless hours to sit and contemplate the error of his ways. Does he really need to be sentenced to serve even the lowest Guideline sentence of 46 months to satisfy all the goals of sentencing? Mr. Mayfield suggest that the answer to that question is a resounding "no." He suggests that a sentence of 12 months and one day, followed by the maximum term of supervised release is a reasonable sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2).

Dated this 7th day of August, 2007.

Respectfully submitted,

s/ Donnie W. Bethel
DONNIE W. BETHEL
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail:don_bethel@fd.org
IN Bar Code: 14773-49

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.   ) | **Case No.: 2:06cr257-MEF** |
| ) | |
| **ANDREW PRESTON MAYFIELD** ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Todd A. Brown, Esq., Assistant U. S. Attorney.

Respectfully submitted,

s/ Donnie W. Bethel
DONNIE W. BETHEL
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail:don_bethel@fd.org
IN Bar Code: 14773-49